Erma R. MALLORY; Joyce S. Byrd
Plaintiffs–Appellants,

and

Barbara A. Hill;  Vivian E.
Reid Plaintiffs,

v.

BOOTH   REFRIGERATION   SUPPLY
CO., INC., a/k/a Refrigeration Supply
Co., a/k/a Booth Supply Co. Defen-
dant–Appellee.

No. 88–2574.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 9, 1989.

Decided Aug. 23, 1989.

Henry L. Marsh, III (D. Eugene Cheek, Hill, Tucker & Marsh; Jay J. Levit, Levit & Mann on brief), for plaintiffs-appellants.

Cynthia Eppes Hudson (Eva S. Tashjian-Brown, McGuire, Woods, Battle & Boothe on brief), for defendant-appellee.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

BUTZNER, Senior Circuit Judge:

Erma Mallory and Joyce Byrd appeal from a district court judgment in favor of Booth Refrigeration Supply Company (Booth Supply). Mallory and Byrd sued Booth Supply under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 alleging race discrimination in wages and promotions. After a bench trial, the district court found that there had been no discrimination. Because its judgment is supported by the evidence, we affirm.

I

Booth Supply is a wholesale supplier of refrigeration, heating, and air conditioning equipment. The company is a family-owned business begun by E.L. Booth and his brother. E.L. Booth personally managed the company until his death in June 1987. Both Byrd and Mallory are black and have been employed in the main office in Richmond, Virginia, since 1975 and 1976 respectively. Byrd is an accounts receivable clerk and Mallory is a government billing clerk; both work in the accounts receivable department.

E.L. Booth made all employment decisions at issue in this case. He promoted employees based on his personal observations. There were no written policies on promotions, and the company did not post announcements about available positions.

In the three years preceding Byrd's and Mallory's complaint, three supervisory positions became available in the main office, one of which was in Byrd's and Mallory's department. This position opened in the summer of 1986, and E.L. Booth promoted a white employee, Lori Thorp, to the job in October 1986. Subsequently, Mallory and Byrd filed a complaint with the EEOC and in due course instituted this action alleging that E.L. Booth's failure to promote them instead of Lori Thorp was due to racial discrimination.

E.L. Booth also determined all wages, and Byrd and Mallory alleged that he did so in a discriminatory manner. They claimed that similarly situated white employees were paid substantially more than they were paid.

The district court held that Mallory and Byrd failed to produce any evidence that they would have been promoted but for their race. With respect to the discriminatory pay claim, the district court found no evidence that black clerical employees were paid less than similarly situated white clerical employees. Instead, the court found that Byrd and Mallory were among the highest paid clerical employees and that white employees who were paid more worked in different jobs and were therefore not similarly situated.

II

The trial court's determination that Booth Supply did not discriminate against Mallory and Byrd is a factual one and must not be disturbed on appeal unless it is clearly erroneous. *See Pullman–Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). To reverse the trial court's finding under the clearly erroneous standard of review, we must be "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

In *Patterson v. McLean Credit Union,* — U.S. —, 109 S.Ct. 2363, 2376–79, 105 L.Ed.2d 132 (1989), the Court recently explained that where a "promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer," a claim of discrimination with respect to a promotion is "actionable under [42 U.S.C.] § 1981." — U.S. at —, 109 S.Ct. at 2376.

■■■ Promotion from clerk to supervisor with a consequent increase in responsibility and pay satisfies this test. In this event the framework of proof for disparate treatment claims—that is, whether the employer intentionally discriminated against the employee—is the same for actions brought under Title VII, or § 1981, or both statutes. *See Patterson,* — U.S. at —, 109 S.Ct. at 2378. Proof of a prima facie case gives rise to an inference of discrimination.[1] To rebut this inference, the employer must present evidence that the employee was rejected, or another applicant was selected, for a legitimate nondiscriminatory reason. Because an employee has the burden of proving intentional discrimination, she must have an opportunity to prove that the employer's reasons were not the true reasons. *See* — U.S. at —, 109 S.Ct. at 2378. In *Patterson,* the Court cautioned that in implementing this familiar framework, the employee is not required to prove that she is better qualified than the successful applicant. The employee can seek to show that the employer's reason was pretextual by introducing evidence of racial discrimination with respect to other conditions of employment. — U.S. at —, 109 S.Ct. at 2378. Fortunately, the district court anticipated *Patterson* and at the urging of the plaintiffs examined every questioned aspect of the treatment of black employees at Booth.

### III

The evidence disclosed that E.L. Booth considered employees within the accounts receivable department for the supervisory position. He reviewed their job experience, dependability, absenteeism, quality of performance, cooperation with other departments, willingness to work overtime, and ability to get along with and lead coworkers. Booth Supply presented evidence to show that Thorp was superior to Mallory and Byrd in all relevant categories. Byrd had a record of absenteeism and her overall job performance was not rated as highly as was Thorp's. In addition, customers had complained about her handling of accounts. Mallory handled government billing only and apparently refused to perform anything other than her assigned task or to work overtime.

In addition to claiming that they were better qualified than Thorp, Mallory and Byrd assert that E.L. Booth's use of subjective criteria and his refusal to make seniority the dispositive factor suggests that he was motivated by racial animus. They emphasize that they have been with the company much longer than Thorp.

■■ In Part IV, we will discuss the role of subjective criteria for promotion under a disparate impact theory of proof of discrimination. For present purposes, it is sufficient to note that, although the use of subjective criteria is relevant to a claim of racial discrimination, standing alone it does not prove a violation of either Title VII or § 1981. *See Page v. Bolger,* 645 F.2d 227, 230 (4th Cir.1981). The district court found that absenteeism, customer complaints, re-

---

**1.** Referring to *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Court defined the elements of a prima facie case with respect to promotions as follows:

[The employee] need only prove by a preponderance of the evidence that she applied for and was qualified for an available position, that she was rejected, and that after she was rejected respondent either continued to seek applicants for the position, or, as is alleged here, filled the position with a white employee.

*Patterson,* — U.S. at —, 109 S.Ct. at 2378. This definition of a prima facie case is somewhat less exacting than our formulation in *Holmes v. Bevilacqua,* 794 F.2d 142, 147 (4th Cir.1986). Judge Winter and Judge Sprouse, dissenting, proposed a definition that is substantially similar to *Patterson*'s. *See* 794 F.2d at 149.

fusal to perform duties other than those assigned, and refusal to work overtime were valid criteria on which to base a denial of promotion. The court also found that there was no evidence that seniority was ever a factor in making promotion decisions for any supervisory position at Booth Supply.

There was conflicting evidence concerning the company's record of promoting blacks. The district court found that E.L. Booth had promoted a number of blacks to supervisory positions in other departments of the company. Byrd and Mallory contend that these promotions were not bona fide but mere tokenism.

■ During the relevant time period Booth promoted three black employees and four white employees to supervisory positions. Absent more solid evidence supporting Byrd's and Mallory's claim of tokenism, the district court's finding of no significant disparity in Booth's promotion of blacks and whites is not clearly erroneous.

Mallory and Byrd cite several incidents of racial tension in the company to support their contention that E.L. Booth was prejudiced against blacks and used subjective criteria in order to avoid promoting blacks. They also testified that he seemed uncomfortable around blacks.

Most of the episodes occurred in branch offices, not the main office where Mallory, Byrd, and E.L. Booth worked, and they occurred more than four years before the complaint was filed. Although most of the episodes were certainly offensive, they involved other employees in the company's branch offices and not E.L. Booth himself. Moreover, the company introduced evidence that E.L. Booth did not condone these activities but took corrective action. Finally, neither Byrd nor Mallory was ever the recipient of any racial insult; rather they testified that they did not experience racial hostility at the company.

■ We find no merit in Mallory's and Byrd's assertion that the district court erred in finding that they were not qualified for the two promotions which were available in the data entry department.

The district court found that neither Mallory nor Byrd had data entry experience. Byrd and Mallory contest this finding on the basis that they both received instruction in the general skills necessary for office clerical work, including data entry, at business schools they attended after high school. While they may have had some training in data entry, it is undisputed that they never worked in the data entry department at Booth Supply. It was not error for the district court to conclude that they were unqualified for the data entry supervisor positions as compared to the employees in the data entry department whom E.L. Booth promoted.

In applying the clearly erroneous standard, we may not substitute our assessment of the evidence when there are two permissible views of it. *Anderson v. City of Bessemer*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The district court's decision to credit the company's evidence concerning the relative qualifications of Thorp, Mallory, and Byrd and to reject complaints of other incidents of racial discrimination is amply supported by the record.

■ Accepting the district court's findings, as we must, Byrd and Mallory failed to carry their ultimate burden that the company through E.L. Booth intentionally discriminated against them with respect to promotions on account of their race.

## IV

Mallory and Byrd claim that the district court should have analyzed their promotion claim under both the disparate treatment theory and the disparate impact theory.

Quite understandably, the district court analyzed the case under the disparate treatment theory alone. As the Supreme Court recently noted, the disparate treatment theory has conventionally been used "to review hiring and promotion decisions that were based on the exercise of personal judgment or the application of inherently subjective criteria." *Watson v. Fort Worth Bank and Trust*, —— U.S. ——, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827 (1988).

In *Watson,* which was decided after the district court entered judgment in this case, the court held that subjective or discretionary employment practices, including job promotions, may be analyzed under a disparate impact approach as well as a disparate treatment approach. 108 S.Ct. at 2787.

The district court did not foresee that *Watson* would approve analysis of promotion issues under a disparate impact theory. Nevertheless, there is no justification for remanding the case to determine whether Mallory and Byrd can prevail under this method of proof. They cannot.

■ *Wards Cove Packing Co. v. Atonio,* — U.S. —, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989) amplifies *Watson.* Read together, these cases explain several principles that are pertinent to this litigation. The Court reiterated that, in order to prove a prima facie case, the complainants must compare the racial composition of the jobs in question and the racial composition of the qualified population in the relevant labor pool. *Atonio,* — U.S. at —, 109 S.Ct. at 2121. Byrd and Mallory proved that all five clerical supervisory positions in the headquarters were filled by white employees who had been promoted. No black employee had ever been promoted. Of the 18 clerical workers making up the labor pool, 6 were black employees. The difficulty with the claimants' case is that the evidence does not disclose how many employees in the pool were qualified to become supervisors.

The Court also explained that complainants must show more than statistical disparity; they must identify the specific employment practice that is allegedly responsible for the disparity and prove that the practice has caused exclusion of the group of which the plaintiffs are members. *See Watson,* 108 S.Ct. at 2788–89. Byrd and Mallory claimed that E.L. Booth's subjective criteria and refusal to consider length of service has caused exclusion of black employees from supervisory ranks.

The deficiency in the statistical data pertaining to the number of qualified employees precludes Byrd and Mallory from establishing a prima face case of disparate impact. But even if such a case had been proved, they could not prevail. In *Atonio,* — U.S. at —, 109 S.Ct. at 2125, the Court held that if the claimants establish a prima facie case of disparate impact with respect to the employer's practices, the claimants must prove that the proffered justification for the practice does not serve any legitimate employment goals of the employer. Here the district court found that the criteria Booth used for deciding promotions were valid. By crediting Booth's evidence, the district court in effect found that Byrd and Mallory had failed to prove that Booth's practices in making employment decisions did not serve its legitimate goals.

V

■ Mallory and Byrd assign error to the district court's finding that there was no wage discrimination. The district court found that the highest paid clerical workers at Booth headquarters were Mallory and Barbara Hill, another black employee. The court also found that Mallory and Hill were the third and second highest paid clerical workers, respectively, among all the Booth offices. It also found that from December 1986, Mallory was the highest paid clerical worker at headquarters. Finally, the court found that differences in wage rates resulted from differences in jobs. It found "no indication at all that among similarly situated clerical personnel blacks were paid less."

The critical issue is which white employees were similarly situated with Mallory and Byrd for the purpose of comparing wages. Without going into detail, it is sufficient to note that the evidence about the similarity of jobs was in conflict. Mallory and Byrd introduced evidence that, notwithstanding the different departments and job classifications, the clerical work at the headquarters was substantially the same in terms of the effort and skill required.

Booth Supply introduced evidence that different clerical jobs were not substantially similar. A witness testified that even in

the accounts receivable department there was a marked difference between Mallory's responsibilities of handling government accounts and the duties of other clerks who dealt with private customers. Also, uncontradicted testimony disclosed that in accordance with a policy applicable to all employees, Byrd's raises were deferred because of her absences.

The district court's finding of no wage discrimination depended largely on its assessment of the credibility of the witnesses and the weight that it ascribed to their testimony. Since there was evidence to support its findings, we must accept them under the familiar principles of Fed.R. Civ.P. 52(a).

The judgment is affirmed.

