51 F.3d 266
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Juan HOPE, Plaintiff-Appellant,
v.
ST. ANTHONY PUBLISHING, INCORPORATED, Defendant-Appellee.
 No. 92-2084.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 7, 1994.
Decided: March 31, 1995.
 
 ARGUED: Solaman G. Lippman, LIPPMAN & ASSOCIATES, Washington, DC, for Appellant. Brian Taylor Goldstein, FETTMANN & TOLCHIN, Fairfax, Virginia, for Appellee. ON BRIEF: Richard H. Semsker, LIPPMAN & ASSOCIATES, Washington, DC, for Appellant. Edward J. Tolchin, FETTMANN & TOLCHIN, Fairfax, VA, for Appellee.
 Before MURNAGHAN and NIEMEYER, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Juan Hope (Hope) makes two arguments on appeal. First, Hope argues that the district court improperly sanctioned him under Fed.R.Civ.P. 37(b)(2) for failing to comply with the court's discovery orders, which caused the court to grant summary judgment erroneously in favor of Appellee St. Anthony Publishing, Inc. (St. Anthony) on Hope's Title VII race discrimination claims. Second, Hope argues that the district court improperly dismissed his discrimination claims under 42 U.S.C. Sec. 1981. Finding Hope's arguments meritless, we affirm.
 
 I.
 
 2
 Hope, a former "tele-sales account representative," filed this discrimination suit under the United States Constitution, Title VII, and 42 U.S.C. Sec. 1981 after St. Anthony refused to promote him to the position of "tele-sales supervisor," and, after Hope's repeated tardiness and absence from work, fired him. The district court dismissed Hope's constitutional claims. The district court also dismissed Hope's Sec. 1981 claims, finding that Hope's failure to promote claims and other discrimination claims could not succeed under Patterson v. McLean Credit Union, 491 U.S. 164 (1989), which construed Sec. 1981 to reach only discrimination in the formation and enforcement of contracts based on race, not all forms of discrimination that may be encountered in the workplace.
 
 
 3
 The district court permitted Hope's claims to proceed under the aegis of Title VII, limited him to a bench trial, and entered a discovery order on April 8, 1992, that discovery was to be completed by June 12, 1992. On June 9, 1992, Hope informed St. Anthony that he would not be able to furnish discovery within the time-frame set by the court, that he intended to depose St. Anthony on the last day of discovery, and that he expected St. Anthony to provide all documents in its possession bearing on the issues of the case by the discovery cut-off date, then four days away. The court granted Hope's motion for a four-day discovery extension. Hope filed his responses one day after the four-day extension had expired and, in eleven out of the twenty interrogatories, answered with the canned response: "Plaintiff objects to these interrogatories to the extent that they seek information which Plaintiff specifically testified about, and was fully covered in Plaintiff's depositions held on June 11, 1992." (J.A. 80-91.) Hope's counsel explained the one-day delay as attributable to malfunctioning office equipment.
 
 
 4
 St. Anthony objected to Hope's dilatory discovery practices, which included, in addition to the events mentioned above, failures to turn over documents and to provide witness lists in a timely fashion, and St. Anthony moved to exclude any withheld evidence from trial. The court scheduled a hearing on the motion for July 10, 1992. Hope responded on July 9, with Hope's counsel again explaining that his office equipment malfunctioned. At the hearing, the district judge ordered Hope to "furnish all this stuff by Friday [July 17]." (J.A. 105 (emphasis added).) "[T]his stuff" included medical records, Hope's class schedule at his school, Hope's tax return, proper answers to interrogatories, and responses to motions for depositions. (J.A. 103.)
 
 
 5
 Hope had filed a motion to compel the production of documents on July 9, 1992, after the close of discovery. The magistrate judge denied the motion to compel, observing that "there is no evidence in the case that [Hope] did anything for almost a six-month period between January and June to initiate discovery or to initiate any process that would advance the case on its merits." (J.A. 122.)
 
 
 6
 Three weeks before trial, on July 24, 1992, St. Anthony filed a motion for summary judgment or, in the alternative, for default based on Hope's failure to obey discovery orders. The court heard the motion on August 7, 1992. Hope had failed to respond to St. Anthony's motion and Hope's lead counsel did not attend the hearing. An associate to Hope's lead counsel, as well as Hope's local counsel, attended the hearing and argued that the hearing should be delayed on account of their lead counsel's physical ailments, namely: an acute attack of gout. The district judge refused to grant the extension and proceeded to hear argument on the motion. Finding that Hope failed to point to any evidence at the hearing to substantiate his discrimination claims, the court granted St. Anthony's motion for summary judgment, without considering St. Anthony's alternative argument that it should prevail by default. This appeal ensued.
 
 II.
 
 7
 We first address Hope's argument that the district court improperly sanctioned him under Fed.R.Civ.P. 37(b)(2) for failure to comply with the court's discovery orders. Contrary to Hope's assertions, it is clear that the district court considered the motion for summary judgment on its merits and did not award judgment by default to St. Anthony. When St. Anthony raised the issue of default judgment at the August 7 hearing, the district judge interrupted, stating: "let's hear the motion for summary judgment." (J.A. 198.) St. Anthony presented its summary judgment argument, the district judge engaged in an analysis under Fed.R.Civ.P. 56, and, to make the matter even clearer, the court stated in a post-hearing order that "[t]he motion of the defendant for default judgment ... is denied as moot." (J.A. 182.) Accordingly, Hope's argument that the district judge failed to comply with the default judgment standard outlined in Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 503 (4th Cir.1977), which argument Hope has supported with supplemental authority submitted to the court, is inapposite.
 
 
 8
 We review the district court's failure to grant Hope additional time to respond to St. Anthony's motion for summary judgment for abuse of discretion. Price v. General Motors Corp., 931 F.2d 162, 163 (1st Cir.1991). We find none. Hope did not prepare a response to the motion and did not present the excuse that lead counsel had gout until the day of the summary judgment hearing. The district court was well within its rights to rule that the foot ailment did not prevent Hope's lead counsel from preparing a response to the motion and that any problems faced by Hope had been caused by his counsel's laxity in prosecuting the case. This is especially true where counsel for Hope presented no evidence of the nature of the lead counsel's affliction or its severity. Cf. Weisman v. Alleco, Inc., 925 F.2d 77, 79 (4th Cir.1991) (without medical evidence, no good cause shown to continue trial based on client's hospitalization).
 
 
 9
 Turning to the merits, Hope failed to present any evidence to support his Title VII case at the summary judgment hearing. Rather, the uncontroverted evidence revealed that Hope repeatedly showed up late for work or failed to show up at all, that the employee chosen for the position he desired was more qualified than he was, and that Hope's employer treated a white employee who displayed poor work habits in the same way the employer treated Hope: they both were fired. Accordingly, the court's grant of summary judgment was entirely proper.
 
 
 10
 We next address Hope's argument that the district court erroneously dismissed his discrimination claims under Sec. 1981. The claims asserted under Sec. 1981 were dismissed by the court's order of May 1, 1992, not in the Joint Appendix, and affirmed in the court's order of June 12, 1992, denying a reconsideration of the previous order. (J.A.78.) This then left for ultimate disposition the claims asserted under Title VII. The court granted summary judgment on the Title VII claims on August 7, 1992. The court dismissed the Sec. 1981 claims by applying the principles of Patterson v. McLean Credit Union, 491 U.S. 164 (1989), concluding that the promotion sought by Hope "would not have constituted a separate, new and distinct contractual relationship...." (J.A. 78.) While the court's dismissal of the Sec. 1981 claims pursuant to Fed.R.Civ.P. 12(b)(6) may have been improper, we affirm the dismissal for the reasons set forth below.
 
 
 11
 The "framework of proof for disparate treatment claims--that is, whether the employer intentionally discriminated against the employee--is the same for actions brought under Title VII, or Sec. 1981, or both statutes." Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 910 (4th Cir.1989). Thus, had the Sec. 1981 claims survived to the time of the filing of the motion for summary judgment, the Title VII inquiry and the Sec. 1981 inquiry would have been identical. If the Title VII claims fail when subjected to the rigors of a motion for summary judgment, then likewise the Sec. 1981 claims also fail. Therefore, while the basis for the dismissal of the Sec. 1981 claims early on may have been erroneous, such error, if any, was clearly harmless, so that we nevertheless affirm the dismissal of those claims on the basis set out herein.
 
 
 12
 Case law indicates that the plaintiff in a Sec. 1981 claim is not required to show himself better qualified than the person selected. Rather, his burden in establishing a prima facie case is borne by showing his membership in a minority, that he applied for and was qualified for the job, that despite his qualifications he was not selected, and that the position remained open after his rejection. Id.; see also Warren v. Halstead Industries, Inc., 802 F.2d 746, 754 (4th Cir.1986) (applying Title VII analysis in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) to actions under Sec. 1981).
 
 
 13
 Hope has established that he applied for the job of management supervisor but there is little or no evidence that he was qualified for that position. Hope's only evidence of any supervisory experience is a statement in his deposition that at age sixteen he had "supervised" an indefinite number of "coatroom attendants." An element of the job requirement for a management-supervisor was supervisory experience, and this Hope did not demonstrate. Further, there is evidence that the position did not remain open after Hope's rejection, but rather that the person selected for the management-supervisory position was selected at the same time as Hope was rejected. Finally, as the evidence revealed at the summary judgment hearing on Hope's Title VII claims, Hope's repeated tardiness and absence from work provided a legitimate reason for his employer to refuse to promote him. Hope submitted no evidence showing that this reason was merely a pretext for discrimination. Accordingly, we will affirm the dismissal of Hope's Sec. 1981 claims.
 
 
 14
 For the reasons set forth above, the judgment of the district court is hereby
 
 
 15
 AFFIRMED..