52 F.3d 321
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 James H. HARDY, Jr., Plaintiff-Appellant,
v.
CITY-COUNTY BUREAU OF IDENTIFICATION OF WAKE COUNTY, NORTH
CAROLINA; Tim W. Lanier, both individually and in his
official capacity as the Director of the City-County Bureau
of Identification of Wake County, Defendants-Appellees.
James H. Hardy, Jr., Plaintiff-Appellant,
v.
City-County Bureau Of Identification Of Wake County, North
Carolina; Tim W. Lanier, Both individually and in his
official capacity as the Director of the City-County Bureau
of Identification of Wake County, Defendants-Appellees.
 Nos. 93-1911, 93-2053.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 8, 1995.
Decided: April 17, 1995.
 
 ARGUED: Robert James Willis, Raleigh, NC, for Appellant. Shelley Tager Eason, Assistant County Attorney, Raleigh, NC, for Appellees.
 ON BRIEF: Michael R. Ferrell, Wake County Attorney, Raleigh, NC, for Appellees.
 Before WIDENER, WILKINSON, and MICHAEL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 James H. Hardy, Jr., brought this suit against his municipal employer, alleging that he was denied a promotion because of his race. The district court entered summary judgment for the employer, from which Hardy now appeals. We hold that Hardy has presented no issue of triable fact with respect to the ultimate question of racial discrimination. As a result, we affirm the judgment of the district court.
 
 I.
 
 2
 Appellant Hardy has been employed as an Agent by the Wake County, North Carolina, City-County Bureau of Identification ("CCBI") since 1978. CCBI Agents assist local law enforcement in conducting criminal investigations. Upon request by the police, they are dispatched to crime scenes where they collect physical evidence and interview victims and witnesses. All Agents on duty during a particular shift are under the direction of a Field Shift Supervisor.
 
 
 3
 Field Shift Supervisors go on site with Agents to examine crime scenes and head the investigation. They also serve as the Bureau's liaison with law enforcement, handling any complaints about the performance of CCBI Agents. In addition, Supervisors are responsible for administrative tasks like scheduling work shifts and evaluating the performance of Agents.
 
 
 4
 Although CCBI Agents and Field Shift Supervisors both serve investigative functions, a few additional skills are required of Supervisors. In particular, Field Shift Supervisors must possess good communications skills for the public relations aspect of the job. Supervisors must also be knowledgeable about CCBI's investigatory procedures to provide guidance to Agents at crime scenes. Finally (and by definition), Supervisors must have the ability to oversee and manage others.
 
 
 5
 In early 1988, CCBI sought funding for two additional Field Shift Supervisor positions. Pending the outcome of the request, CCBI Agents Lee Roberts and William Hensley worked as Supervisors on an informal, temporary basis. In July of 1988, the positions were officially established. Vacancy notices were soon posted at CCBI.
 
 
 6
 Hardy applied for promotion to Field Shift Supervisor, as did Roberts, Hensley, and several other Agents. After an initial round of interviews conducted by CCBI Director Tim Lanier and Deputy Directors Henry Battle and B.R. Turner, the applicant pool narrowed to four finalists: Hardy, Hensley, Roberts, and an Agent named Harley Frame. Hardy was the only black candidate at this stage of the selection process. Lanier and his deputies agreed that each of the finalists qualified for the job but that Hensley was the top candidate. Accordingly, Lanier selected him for one of the slots. One vacancy thus remained.
 
 
 7
 Lanier chose Roberts for the second position. Thereafter, Hardy filed suit against CCBI and Director Lanier under 42 U.S.C. Secs. 1981 and 1983. His complaint alleged that the failure to promote him over Roberts was based on race. The district court entered summary judgment for defendants on the ground that the promotion would not have created a "new and distinct relation" between Hardy and CCBI, as required by Patterson v. McLean Credit Union, 491 U.S. 164, 185 (1989), and thus the failure to promote was not actionable.[1] Hardy now appeals.
 
 II.
 
 8
 Sections 1981 and 1983 together work to redress disparate treatment of municipal employees in the making and enforcement of contracts. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 731-32 (1989). It is axiomatic, however, that plaintiffs who allege such deprivations must demonstrate discrimination by the defendant with respect to the employment decision at issue.
 
 
 9
 Appellant appears to have lost sight of this fundamental principle. He argues fervently that the promotion at issue constitutes a "new and distinct" contractual relationship, yet produces scant evidence that his employer actually engaged in racial discrimination. In our view, the evidence adduced by appellant gives rise to no reasonable inference that the failure to promote was motivated by racial animus. Because appellant's claim thus must fail in any event, we need not decide the "new and distinct relation" question. See U.S. Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983) (parties and courts should not "unnecessarily evade[ ] the ultimate question of discrimination vel non ").
 
 A.
 
 10
 Appellant proffers two primary pieces of evidence involving matters of race. The first is a statistical analysis of merit pay raises that compares the decisions of two unnamed CCBI officials. As a general matter, bare statistics are insufficient to prove invidious purpose. See McCleskey v. Kemp, 481 U.S. 279, 293-94 (1987). The study itself concludes that "there have been race differences in the awarding of merit pay increases" by one CCBI decisionmaker. The study does not purport to explain the cause of those "differences." Moreover, the study goes only to merit pay raises, not to the promotion sought by appellant, or even to promotions generally; and the record does not reflect whether the study involves the same personnel who made the decision not to promote appellant.[2]
 
 
 11
 Appellant's second offering is a County Equal Employment Review Committee memorandum. The memo recommends that the County Manager find that race was a factor in a performance evaluation that appellant received, and contested, in December of 1988. Significantly, the evaluation at issue was written by Hensley, not Lanier. See Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 911 (4th Cir.1989) (discounting evidence of racial incidents because they did not involve the employee who made the promotion decision). Furthermore, the memo concerns Hensley's evaluation of appellant's job performance for the month of December 1988, an employment matter distinct from the promotion decision that appellant challenges here. See Lilly v. Harris-Teeter Supermarket, 720 F.2d 326, 338 (4th Cir.1983), cert. denied, 466 U.S. 951 (1984). Finally, the memo is significantly undermined by the County Manager's rejection of its recommendation; the Manager ultimately determined that "the denial of [appellant's] merit pay increase was made on the basis of job performance."
 
 
 12
 In short, the claim of discrimination in this case is notably diffuse. It fails to come to grips with the employment decision in dispute. Neither the statistics nor the memorandum generate a reasonable inference that the decisionmaker in this case intentionally discriminated against appellant in declining to promote him.
 
 B.
 
 13
 Not only has appellant failed to create any genuine issue of fact with respect to discrimination, but it appears that Lanier had several legitimate reasons for his choice of Roberts over appellant.
 
 
 14
 First, appellant lacked the degree of supervisory experience possessed by Roberts. Appellant's only such experience was overseeing three file clerks while in the Army, while Roberts' managerial background included his temporary duty as a Field Shift Supervisor. Second, appellant's superiors repeatedly expressed concern regarding his ability to communicate effectively with others during an investigation. No such doubts were voiced by Roberts' supervisors. Third, appellant's personnel file contained at least four complaints of substandard performance between 1986 and 1988. Most asserted that appellant lacked diligence and employed improper procedure during investigations; one complaint lodged by the local district attorney charged that appellant's unsatisfactory work had seriously compromised a criminal prosecution. As the district court noted, Roberts' file contained no complaints. Finally, Lanier testified that Roberts' interview was substantively better than appellant's because Roberts expressed a commitment to teamwork, which is an important value at CCBI.
 
 
 15
 These disparities between appellant and Roberts track the general job requirements for Field Shift Supervisors: supervisory ability, communications skills, and investigatory excellence. Under the circumstances, Lanier's selection of Roberts lacks the indicia of discrimination.
 
 
 16
 In light of the foregoing evidence, we hold that no trier of fact could draw a nonspeculative conclusion that racial discrimination was afoot in the promotion of the second Supervisor.[3] Accordingly, the district court did not err in disposing of appellant's claim on summary judgment.
 
 III.
 
 17
 The judgment of the district court is hereby
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The Civil Rights Act of 1991 amended Sec. 1981 and overturned Patterson. Pub.L. No. 102-166, 105 Stat. 1071. Because the employment decision in this case occurred prior to the Act's passage, however, the pre-amendment law controls. Rivers v. Roadway Express, 114 S.Ct. 1510 (1994)
 
 
 [2]
 Appellant bears the burden in a case of this sort to establish precisely which CCBI officials were involved in the merit pay recommendations versus the promotion decision in this case, and to show that the decisionmakers were the same in both contexts. He says only in his brief, however, that Lanier "intervened in the evaluation process which formed the essential step in the merit pay selection system." He does not state who the other decisionmakers in that process were, nor does our search of the record indicate the answer. Appellant has clearly failed to carry his burden
 
 
 [3]
 We thus need not reach the question whether the district court abused its discretion in denying leave to amend the complaint to state a claim under Sec. 1983 for violation of the Equal Protection Clause, for such claims similarly require proof of intentional discrimination