**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLES R. MCPHAIL,
<u>Plaintiff-Appellant,</u>

v.

TOWN OF LAGRANGE, a Municipal
Corporation,
<u>Defendant-Appellee,</u>

and

JOSEPH T. HARRISON; JERRY W.
WOODALL; WILLIAM N. SMITH;
WALTER ELLIS; BOBBY WOOTEN, in
their official capacities as

Councilmen of the Town of
LaGrange; CHARLES L. GRAY, in his
official capacity as Mayor of the
Town of LaGrange; MICHAEL
TAYLOR, in his official capacity as
Town Manager for the Town of
LaGrange; JOHN L. SULLIVAN, JR., in
his official capacity as Chief of
Police for the Town of LaGrange;
FRED STATEN, SR., in his official
capacity as Mayor Pro-Tem for the
Town of LaGrange,
<u>Defendants.</u>

No. 96-1269

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
James C. Fox, District Judge.
(CA-94-178-4-Fl)

Submitted: January 27, 1998

Decided: February 13, 1998

Before RUSSELL, NIEMEYER, and HAMILTON,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Gary H. Clemmons, CHESNUTT, CLEMMONS & THOMAS, P.A.,
New Bern, North Carolina, for Appellant. J. Randall Hiner, Anne
Duncan Edwards, WARD & SMITH, P.A., New Bern, North Caro-
lina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In December 1994, Appellant Charles R. McPhail filed a complaint
against the Town of LaGrange ("LaGrange") under 42 U.S.C.
§§ 2000e-2 & 2000e-3 (1994) and 42 U.S.C.§ 1981 (1994) alleging
racial discrimination in the town's employment practices. McPhail, a
black male and a former police officer for LaGrange, alleged that he
was demoted and subsequently denied promotions to chief of police
and captain on account of his race and in retaliation for having filed
charges with the Equal Employment Opportunity Commission
("EEOC"). The district court dismissed McPhail's § 1981 claim that
he was denied a promotion to captain for failing to state a claim under
Fed. R. Civ. P. 12(b)(6). The court also denied McPhail leave to
amend the complaint. Finally, the court granted LaGrange's motion
for summary judgment. We affirm.

2

McPhail was hired as a patrolman for the LaGrange Police Department in 1981. He was promoted to sergeant in 1983 and promoted to assistant chief of police in 1987. In 1992, McPhail and Chief of Police Pelletier had an argument over scheduling. The town manager, Michael Taylor, who was responsible for the hiring and firing of police officers, suspended McPhail for one week. In June 1993, based partially on the impression that McPhail and Pelletier could not work together, Taylor and the city council decided to look for a new chief of police. It was decided that Pelletier would remain in the position until he became eligible for retirement and that he would leave as soon as a new chief of police was hired. In addition, it was decided that all police officers, including McPhail, be demoted to the rank of patrolman.

On August 2, 1993, McPhail filed his first EEOC charge alleging discrimination in his demotion to patrolman. Meanwhile, the search for a new chief of police was commenced by the Town Council. McPhail applied for the position along with twenty-three others. Five applicants were selected for closer evaluation, one of whom was black, and three of those five were interviewed. McPhail was not a member of either group. John Sullivan, a white male, was chosen to be the new chief of police. Sullivan was police chief for the Fremont Police Department. He had the intermediate law enforcement certificate and the advanced law enforcement certificate from the Training and Standards Commission. Sullivan was certified by the Criminal Justice Training and Education Standards Commission and the North Carolina Department of Community Colleges to provide instruction in law enforcement. Sullivan also completed the FBI major case investigation course and taught a variety of law enforcement courses at the local community college. McPhail had none of this advanced training or experience. McPhail was trained in firearms, radar, and accident reconstruction. McPhail was not selected for the position because of his lack of advanced training and perceptions by the Town Council regarding his supervisory ability based upon the situation with Pelletier.

On December 5, 1993, the same day he was sworn in as chief of police, Sullivan hired J.M. Sasser, a white male, as a police officer. Sasser served with Sullivan in the Fremont Police Department. He had a total of six years' law enforcement experience. During his first

3

few months as chief of police, Sullivan appointed both McPhail and Sasser as acting supervisors. On May 4, 1994, McPhail filed his second EEOC complaint, alleging that LaGrange discriminated against him for failing to appoint him as chief of police.

On June 17, 1994, Sullivan promoted Sasser to Captain, a newly-created position. This position was not held open or advertised for applications. As Captain, Sasser was second-in-command. Six days later, McPhail filed his third EEOC complaint, alleging that Sullivan discriminated and retaliated against him in failing to promote him to police captain.

According to McPhail, after the filing of the second EEOC charge, Sullivan began to show displeasure in McPhail's work. On June 20, 1994, Sullivan suspended McPhail for two days for making a statement to a media representative regarding an ongoing investigation, a violation of department regulations. On July 3, 1994, Sullivan gave McPhail his annual evaluation, the first one Sullivan had ever given McPhail. Sullivan told McPhail that he needed improvement. He specifically directed McPhail to make more of an effort in preliminary investigations when taking complaint reports and to make building checks on a consistent basis. McPhail was also informed that he had not completed investigations in seven incident reports and had not made any arrests. Sullivan also faulted McPhail for having a below-standard attitude and not exhibiting leadership skills or assisting other officers. McPhail stated that he misunderstood what was required of him and a follow-up evaluation was scheduled one month later. The second evaluation noted little improvement. On October 3, 1994, Sullivan removed McPhail from the acting supervisor position.

During this period, McPhail was seeking medical treatment for headaches, chest pains, and dizziness. On October 10, 1994, Dr. Hayes treated McPhail for these symptoms and placed him on medical leave. Dr. Hayes sent a note to Sullivan stating that McPhail was undergoing treatment. Sullivan told McPhail that by October 18, 1994, he must submit further information regarding his treatment in accordance with department policy. McPhail submitted a more detailed doctor's note which Sullivan found not to be in compliance with policy. He informed McPhail that he was absent from duty without leave.

4

Sullivan completed a third evaluation on November 1, 1994, and found that there was no improvement in McPhail's performance. Based on the three below-satisfactory reviews, McPhail was terminated on November 3, 1994. Meanwhile, on November 1, 1994, McPhail faxed a third doctor's note to Sullivan's office. However, Sullivan also stated that he did not see the note until November 4, 1994.

We review an order granting a motion to dismiss de novo. The factual allegations contained in the complaint are accepted as true and must be construed in the light most favorable to the plaintiff. The order may be affirmed "only if it appears beyond doubt that the Plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." Flood v. New Hanover County, 125 F.3d 249, 251 (4th Cir. 1997).

In the complaint, McPhail alleged the following:

> 33. On Friday June 17, 1994, six weeks after McPhail filed his second charge of discrimination with the EEOC, Chief John Sullivan promoted Officer Sasser to the rank of Captain within the LaGrange Police Department. The rank of Captain means that Sasser was second in command only to Chief Sullivan.

> 34. The position of Captain was a newly created position within the LaGrange Police Department, which had never had the rank of Captain previous to this time. Furthermore, upon information and belief, the position of Captain was not advertised or otherwise held open for application by any other interested parties. Furthermore, upon information and belief, Sasser was promoted to Captain after having served only 5 months on the LaGrange Police Force, therefore his status was one of a probationary employee under Article III, Section 3 of the Town Policy. Sasser had never held a supervisory position in law enforcement, and had a total of only six years, including part-time work, of experience in law enforcement at the time he was promoted. Sasser had served under Chief Sullivan when Sullivan was Chief of the Fremont, North Carolina, Police Department. Upon information

5

and belief, Sasser's starting salary was approximately $22,000.00 per year as a patrolman, which was greater than that earned at that time by Plaintiff, who had been a police officer for 13 years.

35. On June 23, 1994, Plaintiff filed a third charge of discrimination with the EEOC. McPhail alleged that he was denied a promotion to the position of Captain on the LaGrange Police Force because of race discrimination on the part of the Town of LaGrange Police Department.

(JA at 22).

A claim of disparate treatment in employment is analyzed in the same manner regardless whether the claim is brought under Title VII or § 1981. See Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 910 (4th Cir. 1989). A plaintiff must establish that he: (1) belonged to a racial minority; (2) sought and was qualified for promotion to a position to which promotions were being offered to persons of his qualifications; (3) despite the qualifications, he was rejected; and (4) after his rejection, the position remained available by promotion to others of his qualifications. See Wright v. National Archives & Records Serv., 609 F.2d 702, 714 (4th Cir. 1979).

Here, McPhail's complaint clearly states the position of captain was not open to any other officers other than Sasser. There is no indication anyone else was considered for the position or that McPhail was rejected for the position. Nor does he allege that he was not approached about the captain's position because of his race. McPhail's complaint merely shows that he was treated no differently than his fellow white officers. Accordingly, we agree with the district court that McPhail failed to allege a prima facie case under § 1981.

We also find the court did not abuse its discretion in denying McPhail's motion to amend the complaint to include a Title VII claim based upon the failure to promote to captain. See Smith v. Angelone, 111 F.3d 1126 (4th Cir.), cert. denied, ___ U.S. ___, 66 U.S.L.W. 3128 (U.S. July 17, 1997) (No. 97-5106). Leave to amend should be freely given when justice so requires. See Fed. R. Civ. P. 15(a). However, in this instance, since the court determined that McPhail failed

6

to state a claim, it was futile to permit him to amend the complaint with a similar legal theory. See Foman v. Davis , 371 U.S. 178, 182 (1962) (leave to amend may be denied if amendment is futile).

We also find that the court properly granted summary judgment to the Defendant on McPhail's remaining claims. LaGrange contended McPhail was not promoted to chief of police because of his lack of advanced training and concerns about his supervisory skills. A prima facie case is successfully rebutted if the white person promoted was better qualified for the position. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). Clearly, Sullivan had more significant advanced training compared to McPhail. Although having advanced training was not a requirement for the position, it was preferred. Furthermore, McPhail cannot show that the proffered reasons were pretextual. Id. McPhail did not contend Sullivan's advanced training and his prior experience as a chief of police did not make him an attractive candidate for the position. Nor did he rebut the perception held by Town Council members regarding problems between him and Pelletier.

McPhail also contends that the district court improperly granted summary judgment on his claim that he was terminated due to his race and in retaliation for having filed complaints with the EEOC. McPhail failed to show the proffered reasons for his termination were pretextual. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981); Carter, 33 F.3d at 460.

Accordingly, we affirm the district court's orders. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument will not aid in the decisional process.

AFFIRMED

7