UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CARL E. BROWN, JR.,
Plaintiff-Appellant,

v.

MARYLAND-NATIONAL CAPITAL
PARK AND PLANNING COMMISSION;

No. 98-1242

A. EDWARD NAVAREE; JOHN HEATER;
PATTI COLIHAN; VIVIAN MCGETTIGAN;
MARY WILLIFORD; WILLIAM H.
HUSSMAN,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-96-2343-MJG)

Submitted: August 4, 1998

Decided: August 25, 1998

Before WILKINS and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John H. Morris, Jr., Baltimore, Maryland, for Appellant. Henry Mor-
ris, Jr., Samuel K. Charnoff, ARENT, FOX, KINTNER, PLOTKIN
& KAHN, P.L.L.C., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Carl Brown appeals a district court order granting summary judgment to the Defendants and dismissing his employment discrimination complaint. Brown, an African-American male, challenges the district court's dismissal of his claims filed against the Maryland-National Capital Park and Planning Commission (PPC) under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 (1994) and 42 U.S.C. § 1981 (1994). Brown alleged that he was denied a promotion and subjected to a hostile work environment. Finding no error, we affirm.

Brown began working for PPC in March 1987 as a Purchasing Specialist in the Purchasing Division of the PPC, an agency created by the Maryland General Assembly to plan and manage recreation areas in the Maryland-Washington Regional District. In 1990, Brown filed a charge of discrimination with the EEOC against PPC alleging racial harassment and a discriminatory failure to promote. The parties settled the dispute by mutual agreement in January 1991. Brown alleges that even after the settlement, he continued to receive discriminatory treatment.

In October 1994, Donald Bartholomew, Brown's immediate supervisor and the Purchasing Division's Purchasing Manager, resigned. Brown immediately expressed his interest in being considered to fill the Purchasing Manager position. PPC decided that, rather than filling the vacant position, it would terminate the position and redistribute the Purchasing Manager's former responsibilities to existing staff members, including Brown. Brown alleges that the reorganization was executed by PPC to prevent him from being promoted to the Purchasing Manager position.

Brown also alleges that PPC employees created a racially hostile work environment for him. He alleges that he was subject to demean-

ing and unprofessional treatment, his activities were more closely monitored than those of the white employees, and his professional development at PPC was intentionally deterred.

We review the district court's grant of a motion for summary judgment de novo. See Nguyen v. CNA Corp., 44 F.3d 234, 236-37 (4th Cir. 1995). A summary judgment motion should only be granted if there is no genuine dispute as to an issue of material fact and the moving party is entitled to judgment as a matter of law. Id. (citing Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The district court must evaluate the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in that party's favor. See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Absent direct evidence of discrimination, a plaintiff must first demonstrate a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Once a party has made a prima facie case, the employer must provide a legitimate nondiscriminatory justification for its action. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). If the employer advances such a justification, the plaintiff must then prove that this justification is a mere pretext for an actual discriminatory motive. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993). A claim of disparate treatment in employment is analyzed in the same manner regardless of whether the claim is brought under Title VII or § 1981. See Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 910 (4th Cir. 1989).

The district court found that Brown's claim regarding the denial of a promotion failed to establish a prima facie case. Even if Brown proved a prima facie case of failure to promote, see Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994), PPC demonstrated a nondiscriminatory reason for deciding to abolish the position in a reorganization and redistribute the Purchasing Manager's responsibilities. PPC claims that it redistributed the Purchasing Manager's responsibilities to conserve resources and create a more efficient bureaucracy. The success or failure of the reorganization is not evidence that PPC intended to abolish the position in order to discriminate against Brown. The court

3

may not review or second-guess an employer's business decisions. See EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir. 1992).

Brown cites several speculative reasons why PPC's proffered reason is pretextual. He argues that the reorganization does not promote efficiency and is suspect because it is inconsistent with the department's organization efforts over the past few years. Brown also alleges that it is suspect because the reorganization plan became final after he expressed his interest in applying for the Purchasing Manager position. He also states that the reorganization conferred some responsibilities upon a white manager who was allegedly not as qualified to exercise those responsibilities as Brown. Brown alleges that his claims are sufficient to raise a fair inference of discrimination to be decided by a jury.

Brown's assertions are not supported by factual evidence and do not rise to the level of creating an inference of discrimination. Indeed, due to the reorganization, Brown was given additional authority to review contracts and purchase orders. These responsibilities were previously performed by the Purchasing Manager. PPC gave Brown authority to review contracts and sign purchase orders for amounts of up to $50,000, an increase in his previous signing authority of approximately $25,000. Because Brown's job responsibilities increased, his position was reclassified from the position of Senior Purchasing Specialist, Grade 17, to Administrative Specialist III, Grade 18. PPC also increased Brown's salary five percent, which was then the highest salary paid to any Purchasing Division professional. We therefore agree with the district court that Brown failed to show that PPC's reason was pretextual. Thus, we find summary judgment was appropriately granted on this claim.

Next Brown alleges that he was subjected to a hostile work environment due to the actions of managers of the agency. Racial harassment that creates a hostile work environment is actionable under Title VII because it amounts to discrimination in the conditions of employment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63-68 (1986); Katz v. Dole, 709 F.2d 251, 254 (4th Cir. 1983); see also 42 U.S.C. § 2000e-2(a)(1) (1994) (prohibiting an employer from discriminating "against any individual with respect to [the] . . . terms, conditions, or privileges of employment, because of such individual's

4

race, color, religion, sex, or national origin"). To establish a hostile work environment claim, Brown must prove that: (1) the conduct in question was unwelcome; (2) the harassment was based on race; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) there is some basis for imposing liability on the employer. See White v. Federal Exp. Corp., 939 F.2d 157, 159-60 (4th Cir. 1991); Swentek v. USAir, Inc., 830 F.2d 552, 557 (4th Cir. 1987).

The harassment is actionable only if it is so severe or pervasive to "alter the conditions of [the victim's] employment and create an abusive working environment." Vinson, 477 U.S. at 67 (internal quotation omitted) (alteration in original). In order to determine whether the conduct alleged by Brown was sufficiently severe or pervasive to state a claim, we must examine the totality of the circumstances, including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).

First, Brown alleges that he was directed to work full-time on a project processing certification requests for a PPC program. According to Brown, he was assigned to the project to create an excuse to terminate him. However, after the project ended, Brown returned to his normal duties and did not suffer any detrimental effects of the temporary reassignment.

Brown also cites two incidents involving his supervisor, John Heater, the Finance Manager of the Finance Department. Brown complains of one instance in which Heater discussed business with him in the men's room. Brown objected to the venue of the conversation, and alleged that he did not witness Heater discussing business with white employees in the men's room. Heater stated that he will discuss business with employees wherever he encounters them, including the men's room. Regardless, this isolated incident was "genuinely trivial" and cannot support a hostile work environment claim. See Carter, 33 F.3d at 461.

Brown also cited two occasions on which Heater questioned Brown in a demeaning manner. Bartholomew, Brown's past supervisor, testi-

5

fied that occasionally Heater would use an agitated tone of voice when conversing with Brown. However, he also testified that with the exception of one occasion, Heater's interaction with Brown was always within the bounds of appropriate workplace behavior. In addition, Brown did not offer any specific details about any further inappropriate interactions.

Brown makes other conclusory and speculative allegations of differential treatment based upon race. He alleges that his reasons for taking leave were improperly publicized, that he was denied the opportunity to attend programs for his professional development, and that he was subjected to greater scrutiny by his supervisors than his white co-workers. The record does not support these allegations. Brown's leave was publicized in a similar fashion to white employees. PPC provided more funding for Brown's professional development seminars than any other employee in the department. Finally, Brown failed to provide specific information regarding the scrutiny claims, such as the frequency or circumstances regarding inquiries of his whereabouts. The conduct at issue was neither frequent nor severe. We therefore agree with the district court that summary judgment was appropriate as to Brown's hostile work environment claim.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED