**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES HUBERT,
<u>Plaintiff-Appellant,</u>

v.

No. 98-1317

GRAPHIC PACKAGING FLEXIBLE
CORPORATION,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, District Judge.
(CA-96-182-3-MU)

Submitted: August 11, 1998

Decided: August 28, 1998

Before WIDENER and WILLIAMS, Circuit Judges, and HALL,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Michael A. Sheely, Charlotte, North Carolina, for Appellant. William
P. Farthing, Jr., Stacy K. Weinberg, PARKER, POE, ADAMS &
BERNSTEIN, L.L.P., Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

James Hubert appeals from the district court's grant of summary judgment in favor of Defendant Graphic in Hubert's employment discrimination claim. We affirm.

Hubert, an African-American male, began working at Graphic's Charlotte, North Carolina, facility in 1971.[1] Graphic's Charlotte plant manufactures flexible packaging materials primarily for food packaging. The Charlotte plant is divided up into various departments, the Pre-Press, Press, and Finishing Departments, in which hourly employees report to Production Supervisors, who in turn report to a Department Manager or to the Plant Manager. During the 1980s and early 1990s, Hubert was a Production Supervisor in various departments. In 1993, Hubert became a Production Supervisor in the Finishing Department.

From the fall of 1992 to the fall of 1995, Phil Wedding was Hubert's direct supervisor. Wedding worked as the Production Manager and was then ultimately the Plant Manager. Wedding reported directly to the General Manager John Keane. When a salaried position became available, Graphic identified internal candidates for the position in one of two ways. First, Keane, Wedding, or Kristine Peasley, Graphic's Human Resources Manager, would approach employees they believed warranted consideration. This determination was made based on whether the employee had been doing an excellent job in their current position, whether they were assertive, whether they took on additional responsibilities on their own, and whether they could work well with others. Alternatively, Graphic also considered for sal-

_____

[1] Hubert actually began working at Graphic's predecessor company, Package Products Co., which, after several transactions, was finally purchased by Graphic in 1994.

2

aried positions those employees who saw that a vacancy existed and had expressed a desire to be considered for advancement.

Hubert admittedly never expressed any interest in advancement to Keane, Wedding, or Peasley. Nor did Hubert "demonstrate the kind of initiative with regard to career development and advancement" that would lead Keane, Wedding, or Peasley to think that Hubert warranted consideration for a promotion. Hubert's performance ratings were generally standard, with one above-average rating.

In late 1994/early 1995, Graphic created the position of Production Control Manager in order to gain control of warehouse operations, which had declined in efficiency since 1993. The duties encompassed in this position had up until 1993 been done by Wayne Hargett in his position as Warehouse Supervisor. However, Graphic decided to eliminate Hargett's position in 1993 and assign his duties to a purchasing manager. Once Hargett left the warehouse supervisor position in 1993, freight costs began to escalate and it became apparent that the purchasing manager could not perform Hargett's previous duties as effectively. In order to get warehouse operations back on track, Graphic re-opened the position of Warehouse Supervisor, with some expanded duties, and re-named it Production Control Manager. The new position encompassed shipping and receiving, warehouse/inventory control, scheduling and planning, and graphics.

Keane, Wedding, and Peasley identified Hargett for the Production Control Manager position because Hargett had previously held the position, and was the only person in Graphic with adequate qualifications and knowledge about warehouse operations to immediately step in and take charge. In addition to his extensive experience managing Graphic's warehouse and conducting shipping and receiving, Hargett also had previous experience in planning and scheduling. In contrast, although Hubert had done shipping and receiving on occasion, he had never been in a position where his primary responsibilities were shipping and receiving. Hubert had been in a position where warehousing was his primary responsibility while he was in the military several decades ago.

In 1995, Graphic also created the position of Finishing Department Manager. Graphic created this position because Graphic's sales vol-

3

ume grew in 1995, creating problems within the manufacturing operation. Graphic became unable to finish orders quickly enough due to the increased volume of business. The increased volume led to defective product, which led to significant problems in the Finishing Department, where orders are completed and turned into finished goods prior to being shipped to customers, and where defects are corrected if necessary. The Finishing Department was unable to correct the defects quickly enough, resulting in that area of the plant being clogged.

Marc Bray, Graphic's Technical Manager, suggested to Keane the idea of creating a Finishing Department Manager in order to address the clogging and quality issues in the Finishing Department. Bray suggested Earl Kell, Graphic's Quality Assurance Manager, for the position. Kell had previously asked to be promoted, and had expressed an interest to Bray in becoming more involved in the manufacturing side of Graphic's operation. Prior to coming to Graphic in 1990, Kell had worked at another flexible packaging company for twenty-three years. While there, Kell worked in the shipping and finishing departments previously, and had spent fifteen years in quality assurance. Kell also acted as the shift supervisor of the Finishing Department at his prior job. As a Quality Assurance Manager at Graphic, Kell had implemented a plant-wide inspection system for all Departments, including the Finishing Department, and regularly went out on the plant floor when trials were running on machines in the Finishing Department.

Hubert was a Production Supervisor in the Finishing Department during the time that area was having problems. Both Bray and Wedding viewed the problems in the Finishing Department as caused at least partially by the faulty supervision of Hubert. Keane stated that although he did not think Hubert had any direct role in creating the Finishing Department problems, Hubert was not able to take charge of the situation and attempt to fix the problems.

Kell agreed to accept the position on a temporary basis. In February 1996, Graphic decided to make his temporary transfer permanent after determining that Kell had made significant headway on correcting the problems in that department.

4

Hubert brought this employment discrimination action in 1996, contending that Graphic discriminated against him on the basis of race in violation of 42 U.S.C. § 1981 (1994), when it promoted Kell and Hargett to manager positions.**2** The district court granted Graphic's motion for summary judgment.

We review a district court's grant of summary judgment de novo and affirm only if the record reveals no genuine issue of material fact. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). The same elements of proof and framework that apply to discrimination actions under Title VII of the Civil Rights Act of 1964, apply to actions brought under 42 U.S.C. § 1981. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989); Mallory v. Booth Refrigeration Supply Co., 882 F.2d 908, 910 (4th Cir. 1989).

Here, Hubert has failed to make out a prima facie case of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959-60 (4th Cir. 1996). He never expressed any interest in the positions over which he is suing, nor were his mediocre ratings such that Keane, Wedding, or Peasley would have viewed him as interested in advancement based upon his initiative and job performance. Likewise, he was not qualified for either the Production Control Manager position or the Finishing Department Manager position. As to the Production Control Manager position, Graphic needed a manager who would be able to step in and resolve the problem quickly--someone who was fully trained in warehouse management, shipping and receiving, and Graphic's procedures specifically. Graphic also needed someone who had experience in planning and scheduling. While

_____

**2** Hubert's complaint also consisted of numerous state law claims. Hubert initially filed his complaint in state court, and Graphic timely removed the case to district court on federal question jurisdiction grounds. Hubert filed a motion to have his state law claims remanded, which motion the district court denied on the grounds that Hubert's state law claims arose out of the same facts as his § 1981 claim thus giving the district court supplemental jurisdiction under 28 U.S.C. § 1367(a) (1994). When it granted summary judgment in favor of Graphic on Hubert's § 1981 claim, the district court remanded the state law claims to state court.

Hubert had been in a position where his primary responsibility was warehousing several decades earlier while in the military, he had not recently held such a position, nor had he held such a position with Graphic. Hubert had never held a position where his primary responsibility was shipping and receiving. Accordingly, Hubert cannot show that he was qualified for the position. See Evans, 80 F.3d at 960.

Likewise, Hubert cannot make out a prima facie case of discrimination as to his claim based on the Finishing Department Manager position. Graphic was experiencing serious difficulties in finishing its orders, and when the orders were finished, often the product was defective resulting in customer complaints. Under Hubert's supervision, the Finishing Department was unable to correct the problems. Graphic needed someone who would be able to develop and implement quality controls on the process and who had extensive quality control experience. Hubert had never served in a quality control position, nor had he demonstrated any ability to make progress in correcting the problems in the Finishing Department. Accordingly, Hubert cannot show that he was qualified for the newly-created position, and thus he cannot make out a prima facie case of racial discrimination. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993); Evans, 80 F.3d at 960.

We thus affirm the district court's grant of summary judgment in favor of Graphic. We dispense with oral argument because the facts and legal contentions are adequately set forth in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6